IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DAVID BLAKE TURNER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:20-CV-164-Z-BR |
| | § | |
| DIRECTOR, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

David Blake Turner ("Petitioner") filed a *Petition for a Writ of Habeas Corpus by a Person in State Custody*, challenging the constitutional legality or validity of his state court conviction and sentence. (ECF 1). The undersigned United States Magistrate Judge recommends Petitioner's application for federal habeas corpus relief be DENIED.

## I.      STATEMENT OF THE CASE

On August 14, 2013, Petitioner was charged by Amended Complaint in Randall County, Texas with two (2) counts of the first-degree felony offense of continuous sexual abuse of a child under fourteen (14), in violation of section 21.02 of the Texas Penal Code. *State v. Turner*, No. 24557. (ECF 8-3 at 8–10). On September 2, 2015, Petitioner was charged by grand jury Indictment in Randall County, Texas with the same two (2) counts, slightly enlarging the "on or about" time frame by an additional fifteen (15) days. *State v. Turner*, No. 26096-A. (ECF 8-3 at 36–37). Specifically, the Indictment alleged the following:

> (COUNT I)… in the County of Randall and State of Texas, one DAVID BLAKE TURNER, hereinafter called defendant, during a period that was 30 days or more in duration, to-wit: from on or about June 1, 2013 to on or about August 1, 2013, and before the presentment of this indictment, in said County and State, did then and there, when the defendant was 17 years of age or older, intentionally and

knowingly commit two or more acts of sexual abuse against [S.H.], a child younger than 14 years of age, namely, the following acts:

> (a) The defendant did then and there, with the intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly engage in sexual contact with [S.H.] by touching the genitals of [S.H.], a child younger than 17 years of age, and this act occurred on one or more than one occasion;

> (b) The defendant did then and there intentionally and knowingly cause the penetration of the sexual organ of [S.H.], a child younger than 14 years of age, by the finger of DAVID BLAKE TURNER and this act occurred on one or more than one occasion;

> (c) The defendant did then and there intentionally and knowingly cause the sexual organ of [S.H.], a child younger than 14 years of age, to contact the sexual organ of DAVID BLAKE TURNER and this act occurred on one or more than one occasion.

(COUNT II) … during a period that was 30 days or more in duration, to-wit: from on or about June 1, 2013 to on or about August 1, 2013, and before the presentment of this complaint, in said County and State, did then and there, when the defendant was 17 years of age or older, intentionally and knowingly commit two or more acts of sexual abuse against [S.H.], a child younger than 14 years of age, namely, the following acts:

> (a) The defendant did then and there, with the intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly engage in sexual contact with [S.H.(2)][1] by touching the genitals of [S.H.(2)], a child younger than 17 years of age, and this act occurred on one or more than one occasion;

> (b) The defendant did then and there intentionally and knowingly cause the penetration of the sexual organ of [S.H.(2)], a child younger than 14 years of age, by the finger of DAVID BLAKE TURNER and this act occurred on one or more than one occasion;

> (c) The defendant did then and there intentionally cause the sexual organ of [S.H.(2)], a child younger than 14 years of age, to contact the sexual organ of DAVID BLAKE TURNER and this act occurred on one or more than one occasion.

*Id*.

---

[1] "S.H.(2)," as used herein, is a redaction of the name of a *second* victim, with the same initials as the first victim named in Count I of the Indictment. However, the designation "(2)" indicates, by this Court, that a separate and distinct victim was named in Count II of the Indictment.

Petitioner, represented by counsel, was tried before a jury in the 47th District Court of Randall County, beginning on December 4, 2017. (ECF 8-3 at 147–172). On December 7, 2017, the jury found Petitioner guilty of the offense of Continuous Sexual Abuse of a Young Child "as alleged in Count I of the Indictment," and Continuous Sexual Abuse of a Young Child "as alleged in Count II of the Indictment." *Id.* at 164, 169. The jury then sentenced petitioner to forty-five (45) years imprisonment – on each count – to run concurrently, in the Texas Department of Criminal Justice, Correctional Institutions Division. *Id.* at 174, 179. On that same date, the state trial court accepted the jury's verdict and sentence and entered a corresponding Judgment. *Id* at 174–177 (Count I), 179–182 (Count II).

Petitioner, represented by counsel, filed a Motion for New Trial and Motion In Arrest of Judgment. *Id.* at 186–187. Once these motions were overruled by operation of law, Petitioner, represented by counsel, filed a direct appeal of his conviction and sentence to the Court of Appeals for the Seventh District of Texas arguing (1) the evidence was legally and factually insufficient to support the judgment, and (2) that the jury charge failed to require the jury to find defendant committed two or more acts of sexual abuse over at least thirty days. (ECF 8-13 at 2). On April 2, 2019, the intermediate state appellate court affirmed Petitioner's conviction and sentence. *Turner v. State*, 07-17-00460-CR; 07-17-00461-CR. (ECF 8-15 at 1–13).

Specifically, the appellate court found that the victims described the first incident of sexual abuse as having occurred "in the middle of June" of 2013. *Id*. at 6. One of the victims also recalled a fourth incident of abuse, one that happened to both victims on the same night, that occurred on July 31, 2013 or the early morning hours of August 1, 2013. *Id*. at 7. Petitioner argued on appeal that driving records showed he was "on the road," and away from home and the victims, during a relevant portion of the 30 day time frame alleged in the Indictment. *Id.* However, the court found that the evidence was sufficient to support a verdict that the abuse occurred over a period of 30 or more days.

*Id.* at 8. As to the second issue, the jury charge, the court found that the language of the jury charge was erroneous, but it was not "egregiously harmful" to the defendant. *Id*. at 11–13. Petitioner did not timely seek direct review of the intermediate appellate court's ruling by filing a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals (TCCA).

Petitioner, to date, has not submitted a state application for habeas corpus, despite Petitioner's request to stay (ECF 3) these proceedings. *See* Texas Court of Criminal Appeals, Case Information Search website at https://search.txcourts.gov/CaseSearch.aspx?coa=coscca&s=c  (last accessed on February 10, 2021).

On June 19, 2020, Petitioner, represented by counsel, filed the instant "skeletal" federal application for habeas corpus. (ECF 1 at 1). Petitioner, through counsel, acknowledged his failure to exhaust his state administrative remedies before seeking federal habeas relief, and filed a Motion to Stay (ECF 3) to seek exhaustion with the state courts.

## II.    PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reason:

> Petitioner was denied his constitutional right to effective assistance of counsel because trial counsel failed to obtain exculpatory evidence: Petitioner's driving records show that Petitioner was away from home during part of the 30-day time period where abuse was alleged to have occurred. (ECF 1 at 5).

## III.    STATUTE OF LIMITATIONS

Title 28 U.S.C § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners:

(1)    A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitations period shall run from the latest of –

   (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

## IV.    RESPONSIVE PLEADINGS

On September 9, 2020, respondent filed a Preliminary Answer on Limitations asserting Petitioner's habeas application should be dismissed as time barred. (ECF 6). In her Preliminary Answer, Respondent fully and accurately briefed statutory and case law regarding the 1-year statute of limitations in federal habeas corpus cases, as well as the application of equitable tolling of the limitation period in federal habeas corpus proceedings. Respondent also set forth relevant dates in this case and analyzed the timeliness of Petitioner's habeas application, specifically addressing the beginning of the statute of limitations, a possible claim of equitable tolling, and whether Petitioner's habeas petition makes a claim of "actual innocence" sufficient to create a gateway to hear any time-barred claim. *Id*. at 1–8.

Petitioner filed *no* reply to Respondent's Preliminary Answer.

## V.    FINALITY OF CONVICTION

By responding to Question 18 in his form habeas application, Petitioner effectively acknowledges his judgment of conviction "became final over one year" before filing the instant

federal habeas petition. (ECF 1 at 13). However, on June 19, 2020, Petitioner through his attorney

made the following statements regarding timeliness and equitable tolling:

> The opinion from the state court of appeals issued on April 2, 2019. Thirty days after April 2, 2019 was May 2, 2019. One year after May 2, 2019 was May 2, 2020. On March 13, 2020, TDCJ suspended all in-person attorney visitation with inmates. Communications with inmates quickly deteriorated, a fact recognized by the Fifth Circuit in Orders 2020-4, 2020-6, and 2020-7. TDCJ remains on lockdown. There are multiple sensitive, confidential issues in this case requiring Petitioner's in-person review. The state writ cannot be filed until this in-person review is completed and Petitioner is able to make informed choices about the path of his writ litigation. Due to the continuing lockdown, however, such necessary review is impossible. Accordingly, Petitioner asks the Court to grant him equitable tolling.

*Id.* at 13–14. Therefore, with regard to the finality of Petitioner's conviction, the undersigned makes

the following findings and/or conclusions:

1. Petitioner was sentenced on December 7, 2017. Petitioner filed a direct appeal of his conviction with the appropriate state intermediate appellate court who, on April 2, 2019, affirmed Petitioner's conviction and sentence. Petitioner did not timely file a petition for discretionary review with the TCCA challenging the lower court's ruling.

2. Petitioner's judgment of conviction became final on **May 2, 2019**, when the 30-day period to file a petition for discretionary review of the intermediate appellate court decision expired. Tex. R. App. P. 68.2(a); *see Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th Cir. 2002) (finality determined by when time for filing further appeals expires).

## VI.    START OF THE LIMITATION PERIOD/ STATUTORY TOLLING

The limitations period shall run from the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review <u>unless</u> one of the

circumstances set forth in 28 U.S.C § 2244(d)(1)(B), (C), or (D) clearly applies and triggers a later

begin date. Here, in his application, Petitioner does not assert the 1-year limitation period should start

on a date other than, and later than, the date his conviction became final on May 2, 2019. Rather, in

response to Question 18 of the form habeas corpus application, Petitioner asserts that equitable tolling

should apply to his deadline, due to the nature of the COVID-19 pandemic and the resultant access

attorneys have to clients in prison lockdown situations. Petitioner specifically argues, through

counsel, that Petitioner's *state* habeas application could not be filed without an in-person meeting with Petitioner prior to filing. However, Petitioner's attorney filed the instant federal application in mid-June 2020, without the need to consult with Petitioner in person, over forty-five days after the one-year statutory deadline had passed, but provided no explanation for the failure to file this "skeletal" application within the statutory time frame. Significantly to the Court, Petitioner makes no Reply to the Preliminary Answer pointing out this important fact concerning equitable tolling.

### A. Request for a Stay to Exhaust Stay Remedies

Petitioner has requested a stay to exhaust his state court remedies. To date, Petitioner has not filed a state application for habeas corpus. A district court should grant a stay if it determines that the prisoner has shown good cause warranting a stay, that the prisoner has raised meritorious issues, and that the prisoner has not engaged in intentionally dilatory tactics. *Rhines v. Weber*, 544 U.S. 269, 278 (2005). A failure to grant a stay is reviewed under the abuse of discretion doctrine. *Leachman v. Davis*, 699 Fed. App'x 441, 442 (5th Cir. 2017). The Fifth Circuit determined:

> AEDPA does not deprive district courts of the authority to issue stays that are a proper exercise of their discretion, but it does circumscribe that discretion. Any solution to this problem therefore must be compatible with AEDPA's purposes. *Id.* Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality of state court judgments by allowing a petitioner to delay the resolution of the federal proceedings, and it undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court before filing his federal petition. Thus, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims. Even if good cause existed, the district court would abuse its discretion if it granted a stay when the unexhausted claims are plainly meritless. Where stay and abeyance is appropriate, the district court's discretion is still limited by AEDPA's timeliness concerns. If a district court does not place reasonable time limits on a petitioner's trip to state court and back, petitioners, especially capital petitioners, could frustrate AEDPA's finality goal by dragging out indefinitely their federal habeas review. And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant a stay at all.

*Rhines*, 544 U.S. at 270–272.

**B.  ORDER OF THE COURT – MOTION TO STAY IS DENIED**

First, the Court finds Petitioner has not presented good cause warranting a stay. Petitioner failed to demonstrate cause for the delayed filing of his federal habeas application. Even if the Court were to grant a stay to Petitioner to exhaust his state remedies, if equitable tolling does not apply to Petitioner's federal habeas application, then Petitioner's application is still time-barred. Under the statutory time-bar reset provision of section 2244(d)(1)(B), the one-year limitation commences on the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action. As acknowledged by the Fifth Circuit, "The requirements for this restart are understandably steep." *Wickware v. Thaler*, 404 Fed. App'x. 856, 862 (5th Cir. 2010).

In order to invoke section 2244(d)(1)(B), Petitioner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law. *Id*. Moreover, these requirements imply an element of causality and materiality with respect to a Petitioner's ability to file a habeas petition. Thus, a Petitioner "must also show that … [the impediment] actually prevented him from timely filing his habeas petition." *Krause v. Thaler*, 637 F.3d 558, 561 (5th Cir. 2011) (emphasis added). Petitioner's COVID-19, limited access to in-person meeting with counsel argument fails to contrast why numerous other petitioners are able to continue to present their state and federal habeas claims to the courts during this time. Further, Petitioner's failure to file a Reply to the Preliminary Answer, and failure to further brief the Court concerning equitable tolling, warrant a denial of the stay in this instance.

## VII.   <u>EQUITABLE TOLLING</u>

Petitioner asserts that he is entitled to equitable tolling of the limitation period because the COVID-19 pandemic, and resultant prison lockdown and limitation on access to in-person meetings with his counsel, prevented him from filing a *state* habeas application, which was a prerequisite to

filing his federal habeas application. However, Petitioner failed to articulate an explanation for why Petitioner did not file his federal application *timely*, along with a request to stay in order to exhaust state remedies, when he was able to do so while the pandemic (and presumably in-person lockdown access) raged on during June of 2020. This failure negates equitable tolling.

The one-year statute of limitations on petitions for federal habeas relief by state prisoners is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). However, a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his habeas rights diligently, and (2) that some "extraordinary circumstance" stood in his way and prevented him from effecting a timely filing. *Id*. at 649. The United States Supreme Court has reaffirmed "that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. ___, 136 S. Ct. 750, 755 (2016) (emphasis original). Equitable tolling can apply to the one-year limitation period of section 2244(d) only in "rare and exceptional" circumstances. *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998). The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. Equitable tolling principally applies where the petitioner is "actively misled" by the respondent about the cause of action or was prevented in some extraordinary way from asserting his rights. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). A "garden variety claim of excusable neglect" by the petitioner does not support equitable tolling. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002).

Here, Petitioner has not demonstrated he acted with the reasonable diligence required to justify equitable tolling of the limitation period. The COVID-19 lockdown, and resultant limited access to his attorney, occurred during the last two months of his statutory filing period. Petitioner makes no showing of any actions taken before the lockdown occurred. However, even if the Court looks only to the last two months of the statutory period (early March of 2020 to early May of 2020), Petitioner

never asserts the lockdown prevented him from *all* access to his attorney, rendering the filing of the instant *federal* habeas application impossible or improbable. In fact, Petitioner was able to file the federal habeas application and request for a stay during the lockdown. Given the arguments against equitable tolling made by Respondent in the Preliminary Answer, Petitioner's failure to file any reply to the Preliminary Answer with an explanation as to why the "skeletal" federal habeas application could not have been filed forty-five days earlier and within the statutory deadline, leads to the conclusion that no impediment to filing the federal habeas application existed. This conclusion remains true despite the lockdown and lack of access to in-person attorney meetings from mid-March through the June 19, 2020 filing date.

Even if this Court could disregard Petitioner's failure to meet the due diligence prong of the equitable tolling test and could, instead, look solely to the second prong to justify equitable tolling, the undersigned does not find that extraordinary circumstances beyond Petitioner's control caused the delay in filing here. Petitioner's limited access to in-person meetings with his attorney, does not, in any way, explain how Petitioner was fully prevented from pursuing relief from what he contends is an invalid conviction. The excuse provided did not otherwise make it impossible for Petitioner to meet the federal habeas corpus filing deadline itself, even if certain claims may not yet have been available because of a failure to exhaust these claims (it appears that, in fact, Petitioner's appellate counsel argued the "exculpatory evidence" to the appellate court, but the related ineffective assistance of counsel claim needed to be brought in an 11.07 application). The undersigned finds this argument is without merit.

Petitioner fails to demonstrate he pursued his claims with reasonable diligence, or that extraordinary circumstances beyond his control, qualifying as "rare and exceptional" events, actions or conditions, prevented him from timely seeking post-conviction relief from his conviction.

Consequently, Petitioner fails to demonstrate equitable tolling of the limitation period for filing a federal petition is warranted or that he is entitled to any specific periods of equitable tolling.

## VIII.   ACTUAL INNOCENCE

In his application, Petitioner does not specifically contend that he is actually innocent of the underlying criminal offense, or that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt if his attorney had provided the exculpatory evidence to the jury. However, Petitioner, by his argument regarding exculpatory evidence related to guilt, could be arguing that he is actually innocent of the crimes for which he was convicted. For purposes of this discussion, the Court will consider that Petitioner is arguing actual innocence *as a gateway* for this Court to consider his time-barred claims.

A credible showing of "actual innocence" may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, --- U.S. ---, 133 S.Ct. 1924, 1931 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. (*quoting Herrera v. Collins*, 506 U.S. 390, 404 (1993)). A habeas petitioner who seeks to surmount a procedural default through a showing of "actual innocence" must support his allegations with "new, reliable evidence" that was not presented in the underlying proceedings and must show that it was more likely than not that, in light of the new evidence, no fact finder, acting reasonably, would have found the petitioner guilty beyond a reasonable doubt. *See Schlup v. Delo*, 513 U.S. 298, 326–27 (1995*); see also House v. Bell*, 547 U.S. 518 (2006) (discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default). "Actual innocence" in this context refers to <u>factual</u> innocence and not mere legal sufficiency. *Bousely v. United States*, 523 U.S. 614, 623–24 (1998). Here, Petitioner's only argument that he is factually innocent of

committing the continuous sexual assault offenses of which he was convicted result from his claims that exculpatory evidence exists (work logs showing he was away from home during parts of the relevant 30-day period). However, this "exculpatory evidence" was discussed on his direct appeal in relation to the sufficiency of the evidence, and the appellate court determined that sufficient evidence existed to convict. (ECF 8-15 at 5–8).

The undersigned initially finds it is questionable whether the "new evidence" Petitioner presents to demonstrate his factual innocence even qualifies as "new." Evidence does not qualify as "new" under the *Schlup* actual innocence standard if "it was always within the reach of [Petitioner's] personal knowledge or reasonable investigation." *Hancock v. Davis*, No. 16-20662 (5th Cir. Oct. 23, 2018), *quoting Moore v. Quarterman,* 534 F.3d 454, 465 (5th Cir. 2008). Petitioner has not shown the above information was unavailable to him or trial counsel at or before trial. Even so, the undersigned will consider all of the above information as "new" for purposes of this argument.

Secondly, even assuming *arguendo* that the above information is new, as well as credible and reliable, the undersigned finds such information does not prove Petitioner's factual innocence of the convicted offense. Instead, such information goes only toward the sufficiency of the evidence to find Petitioner guilty of the convicted offense or the credibility of the witnesses. The above information, even if true, would show, at most, that: there are some days during the alleged abuse period where abuse could not have occurred. However, it is not required for the state to show that the abuse occurred every day of the 30-day period, only that the abuse spanned 30 days.

Petitioner has failed to present the necessary credible and colorable showing of factual innocence to establish an actual innocence gateway for his time-barred claims. Namely, Petitioner fails to demonstrate actual innocence by presenting any new, reliable, evidence not previously presented and unavailable to him in the underlying proceedings, sufficient to demonstrate his factual evidence and persuade this Court that it is more likely than not that "no juror, acting reasonably,

would have voted to find him guilty beyond a reasonable doubt" so as to convict petitioner in light of the new evidence. *McQuiggin*, 133 S.Ct. at 1928 (*quoting Schlup*, 513 U.S. at 329). Petitioner has not sufficiently demonstrated his "actual innocence" of the convicted offense as a gateway or exception to, *i.e.*, a means by which to avoid or be excused from, the procedural bar implicated by Petitioner's failure to timely file his petition within the applicable statute of limitation. Consequently, Petitioner has not overcome the time bar for filing his federal habeas corpus petition.

## IX.    FINAL FINDINGS AND CONCLUSIONS

The undersigned makes the following findings and conclusions:

1.    The one-year statutory limitation period was not equitably tolled. Petitioner did not argue that he was prevented from submitting a timely *federal* habeas application, with an appropriate request to stay proceedings to seek state exhaustion.

2.    Petitioner's federal habeas corpus application filed **June 19, 2020** was filed over forty-five (45) days **after** the expiration of the statute of limitations and **is time barred**.

3.    An "actual innocence" exception to the time bar is not applicable to this case.

## X.    ORDER

It is ORDERED:

1.    Petitioner's Motion to Stay (ECF 3) to Exhaust Administrative Remedies is DENIED.

2.    The Clerk of Court shall terminate the Motion to Stay (ECF 3) pursuant to this Order.

## XI.    RECOMMENDATION

For the above reasons and the reasons set forth in Respondent's Preliminary Response filed September 9, 2020 (ECF 6), it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by Petitioner David Blake Turner be DENIED as time-barred.

## XII.    <u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED February 11, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).